UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
───────────────────────────────────────

NIVIA D., o/b/o P.L.D.,

                Plaintiff,

v.                                          5:18-cv-0634
                                           (TWD)
COMM'R OF SOC. SEC.,[1]

                Defendant.
───────────────────────────────────────

APPEARANCES:                                  OF COUNSEL:

OLINSKY LAW GROUP                   HOWARD D. OLINSKY, ESQ.
 Counsel for Plaintiff
250 South Clinton Street
Suite 210
Syracuse, NY 13202

U.S. SOCIAL SECURITY ADMIN.       LUCY WEILBRENNER, ESQ.
OFFICE OF REG'L GEN. COUNSEL – REGION II
 Counsel for Defendant
26 Federal Plaza - Room 3904
New York, NY 10278

**THÉRÈSE WILEY DANCKS**, United States Magistrate Judge

## DECISION AND ORDER

      Currently before the Court, in this Social Security action filed by Nivia D. ("Plaintiff") on behalf of her son P.L.D. ("Claimant" or "P.L.D.") against the Commissioner of Social Security ("Defendant" or the "Commissioner") pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), are Plaintiff's motion for judgment on the pleadings and Defendant's motion for judgment on the pleadings. (Dkt. Nos. 11; 15.) For the reasons set forth below, Plaintiff's motion for judgment on the pleadings is granted and Defendant's motion for judgment on the pleadings is denied.

---

[1] Andrew M. Saul became the Commissioner of Social Security on June 17, 2019.

I.      BACKGROUND

   A.      Factual Overview and Procedural History

P.L.D. was born in June 2000. (Administrative Transcript at 154.[2]) In 2014, he moved to Syracuse, New York from Puerto Rico. (T. 155, 355.) Prior to enrolling in the Syracuse City School District, P.L.D. did not speak English. (T. 46.) Generally, Plaintiff alleges P.L.D. suffers from attention deficit hyperactivity disorder ("ADHD") with aggression, intellectual disability, short term memory, glaucoma in both eyes, anxiety disorder, hypoglycemia, and asthma. (T. 53-55, 154.)

On November 4, 2014, Plaintiff protectively filed an application for Supplemental Security Income ("SSI") benefits on behalf of P.L.D., alleging disability as of January 1, 2010. (T. 53-55, 154.) Plaintiff's application was initially denied on February 6, 2015, after which she timely requested a hearing before an Administrative Law Judge ("ALJ"). (T. 67-76.) On March 24, 2017, ALJ William M. Manico conducted a video hearing. (T. 43-51.) Plaintiff, represented by counsel, appeared in Syracuse, New York, and ALJ Manico presided over the hearing from Falls Church, Virginia. *Id*. With the assistance of a Spanish interpreter, Plaintiff and P.L.D. both testified. *Id*. On April 11, 2017, the ALJ issued a written decision finding P.L.D. was not disabled, as defined by the Social Security Act, since November 4, 2014, the date the application was filed. (T. 18-42.) On March 28, 2018, the Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner. (T. 1-6.) Plaintiff now appeals. (Dkt. No. 1.)

---

[2] The Administrative Transcript is found at Dkt. No. 8. Citations to the Administrative Transcript will be referenced as "T." and the Bates-stamped page numbers as set forth therein will be used rather than the page numbers assigned by the Court's CM/ECF electronic filing system. All other page references identified by docket number are to the page numbers assigned by the Court's CM/ECF electronic filing system.

**B.** **The ALJ's Decision**

Applying the three-step sequential evaluation process to determine whether an individual under the age of eighteen is disabled, the ALJ found P.L.D.: (1) is not engaged in substantial gainful activity; (2) suffers from the severe impairments of ADHD, intellectual disability, and asthma; and (3) does not have an impairment or combination of impairments that meets, medically equals, or functionally equals the criteria of any listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1 (the "Listings"). *Id*. § 416.924(d). (T. at 24-28.) As to the six domains of functioning, the ALJ found that while the evidence suggested P.L.D. has "some limitations in various areas of functioning, there is little to suggest that his restrictions significantly limit his abilities and causes marked deficits in any area." (T. 32-33.) He determined P.L.D. has less than marked limitation in (1) acquiring and using information, (2) attending and completing tasks, (3) interacting and relating with others, and (4) health and physical well-being; and no limitation (5) moving about and manipulating objects, and (6) caring for oneself. (T. 33-39.) The ALJ therefore concluded P.L.D. has not been disabled, as defined in the Social Security Act, since November 4, 2014, the date the application was filed. (T. 39.)

**C.** **The ALJ's Weighing of Opinion Evidence**

The ALJ assigned partial weight to the State Agency's determination that P.L.D. has a marked limitation in his ability to acquire and use information, less than marked limitation in attending and completing tasks, interacting with others, and health and physical well-being, and no limitation moving about and manipulating objects, and caring for himself. (T. 31-32, 62.)

He afforded partial weight to the January 15, 2015, opinion of consultative examiner Jeanne A. Shapiro, Ph.D., who opined, *inter alia*, no limitation in understanding and following simple instructions and directions, no limitation performing simple tasks, mild-moderate

3

limitation performing age-appropriate tasks, no limitation maintaining attention and concentration for tasks (but noted the need for further investigation given his ADHD diagnosis), mild-moderate limitation regarding his ability to learn new tasks, mild limitation regarding his ability to make age-appropriate decisions, no limitation relating to and interacting well with others, and no limitation regarding his ability to deal with stress. (T. 32, 332-41.) She further opined, "[o]verall, there are mild-moderate limitations in his ability to perform age-appropriate activities; and no limitations in his ability to behave in an age-appropriate manner." (T. 335, 340.)

The ALJ assigned great weight to the January 15, 2015, opinion of consultative examiner Kalyani Ganesh, M.D., who opined P.L.D. had "no physical limitation in his ability to participate in age-appropriate activities." (T. 32, 342-345.)

The ALJ afforded limited weight to the March 14, 2017, opinion of Maribel Quinones-Guzman, M.D., P.L.D.'s pediatrician since 2014, who opined, *inter alia*, (1) marked to extreme limitation in the domain of acquiring and using information, (2) marked to extreme limitation in attending and completing tasks, and (3) moderate to extreme limitation interacting and relating with others. (T. 32, 485-89.) Notably, the ALJ found "little in the medical record" to corroborate Dr. Quinones-Guzman's finding of marked to extreme restrictions. (T. 33.) The ALJ found Dr. Quinones-Guzman's opinion "inconsistent with the evidence as whole," including her own level of treatment of P.L.D. *Id*. Thus, the ALJ found Dr. Quinones-Guzman's "very precise check box conclusions are no more than misinformed estimates/guesses, and because of that, [ ] her opinion is entitled to limited weight." (T. 33.)

### D. The Parties' Briefing on Their Cross-Motions

Plaintiff argues the Commissioner's decision is not supported by substantial evidence because the ALJ: (1) failed to weigh or even acknowledge the opinion of Meghan Ostrander, P.L.D.'s English teacher, and (2) failed to follow and apply the treating physician rule when weighing the opinion of Dr. Quinones-Guzman. (Dkt. No. 11 at 10-15.) Defendant argues the ALJ's treatment of Ms. Ostrander's opinion was harmless error and substantial evidence supports the ALJ's evaluation of Dr. Quinones-Guzman's opinion. (Dkt. No. 15 at 6-13.)

## II. APPLICABLE LAW

### A. Standard of Review

A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled. 42 U.S.C. § 405(g); *Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Commissioner's determination will be reversed only if the correct legal standards were not applied, or it was not supported by substantial evidence. *See Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); *accord Grey v. Heckler*, 721 F.2d 41, 46 (2d Cir. 1983), *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979). "Substantial evidence" is evidence that amounts to "more than a mere scintilla," and has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427 (1971). Where evidence is deemed susceptible to more than one rational

interpretation, the Commissioner's conclusion must be upheld. *Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

"To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988). If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a *de novo* review." *Valente v. Sec'y of Health & Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984).

### B. Standard to Determine Disability

An individual under the age of 18 is disabled, and thus eligible for SSI benefits, if he or she has a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months. *See* 42 U.S.C. § 1382c(a)(3)(C)(i).

The Commissioner has established a three-step sequential evaluation process to determine whether a child is disabled as defined under the Act. *See* 20 C.F.R. §§ 416.924(a)-(d). First, the ALJ determines whether the child is engaged in any substantial gainful activity. *Id*. § 416.924(b). Second, if the child is not engaged in any substantial gainful activity, the ALJ

determines whether the child has a medically severe impairment or combination of impairments that cause "more than minimal functional limitations." *Id*. § 416.924(c). Third, the ALJ determines whether the child's severe impairment(s) meets, medically equals, or functionally equals the criteria in the Listings. *Id*. § 416.924(d).

Where an impairment medically meets or equals a listed impairment, the child will be found disabled. *Id*. § 416.924(d)(1). If a child's impairment or combination of impairments does not meet or equal a listed impairment, the ALJ must assess all functional limitations caused by the child's impairments in the following six domains: (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating to others; (4) moving about and manipulating objects; (5) caring for oneself; and (6) health and physical well-being. *Id*. § 416.926a(b)(1). The assessment compares how the child performs in each of these domains with the typical functioning of a child of the same age without impairment. *Id*. § 416.926a(b). A child is classified as disabled if he or she has a "marked" limitation in at least two domains or an "extreme" limitation in one domain. *Id*. § 416.926a(d). In determining whether impairments are "marked" or "extreme," the ALJ considers functional limitations that result from all impairments, including impairments that have been deemed not severe, and their cumulative effects. *Id*. §§ 416.923, 416.924a(b)(4), 416.926a(a), (c), and (e)(1)(i).

A "marked" limitation results when "impairment(s) interferes seriously with [the claimant's] ability to independently initiate, sustain, or complete activities." *Id*. § 416.926a(e)(2)(i). "[The claimant's] day-to-day functioning may be seriously limited when [the claimant's] impairment(s) limits only one activity or when the interactive and cumulative effects of [the claimant's] impairment(s) limit several activities." *Id*. A "marked" limitation is "more than moderate" but "less than extreme." *Id*.

7

An "extreme" limitation, on the other hand, results when "impairment(s) interferes very seriously with [the claimant's] ability to independently initiate, sustain, or complete activities." *Id*. § 416.926a(e)(3)(i). "[The claimant's] "day-to-day functioning may be very seriously limited when [the claimant's] impairment(s) limits only one activity or when the interactive and cumulative effects of [the claimant's] impairment(s) limit several activities. *Id*. An "extreme" limitation is one that is "more than marked." *Id*.

## III. DISCUSSION

### A. The ALJ's Failure to Weigh or Even Acknowledge Ms. Ostrander's Opinion

"When reviewing a child's impairments for functional equivalence, adjudicators must consider 'all of the relevant evidence,' and employ a 'whole child' approach.'" *Carrera v. Colvin*, No. 1:13-cv-1414 (GLS/ESH), 2015 WL 1126014, at *3 (N.D.N.Y. Mar. 12, 2015). "'All of the relevant evidence' includes objective medical evidence and other relevant evidence from medical sources; information from other sources, such as school teacher, family members, or friends; the claimant's statement (including statements from the claimant's parent(s) or other caregivers); and any other relevant evidence in the case record, including how the claimant functions over time and in all setting[s] (i.e., at home, at school, and in the community)." *Id*. at *3 n.8 (citing SSR 09-2P, 2009 WL 396032, at *11 (SSA Feb. 18, 2009)). The regulations expressly provide that, if the claimant is in school, the Administration "will ask your teacher(s) about your performance in your activities throughout your school day. We will consider all the evidence we receive from your school, *including teacher questionnaires*, teacher checklists, group achievement testing, and report cards." 20 C.F.R. § 416.924a(b)(7)(ii) (emphasis added).

The "whole child" approach requires the ALJ to "to consider a child's everyday activities, determine all domains involved in performing them, consider whether that child's

8

medically determinable impairment accounts for limitations in activities, and determine what degree such impairment limits that child's ability to function age-appropriately in each domain." *Carrera*, 2015 WL 1126014, at *3 (citing SSR 09-1P, 2009 WL 396031, at *2-3 (SSA Feb. 17, 2009)).

1. Teacher Questionnaire

Ms. Ostrander instructed P.L.D. in ninth grade English, once a day, five days per week, in special education classes due to a "learning disability," in a self-contained classroom with a student/teacher ratio of 12:1:1. (T. 203.) On March 21, 2017, she completed a teacher questionnaire (Exhibit 15E). (T. 203-09.) In each of the six domains, she compared P.L.D.'s functioning to that of same-age children who do not have impairments and who are in regular education. *Id*.

In the domain of acquiring and using information, she opined P.L.D. has "problems" functioning. (T. 203.) She opined P.L.D. has a "serious" problem in eight out of ten activities and an "obvious" problem in the remaining two activities. T. 203-04.) She further explained P.L.D. "has a difficult time with understanding English, writing English, and applying his skills in class." (T. 204.)

Ms. Ostrander also opined P.L.D. has "problems" functioning in the domain of attending and completing tasks. (T. 204.) She compared P.L.D. to a child of the same age without impairments and she opined a "daily" "obvious" problem in nine out of thirteen activities and a "daily" "slight" problem in the remaining four activities. *Id*. She stated P.L.D. often falls asleep in class, has frequent outbursts that make him leave the class, and often is distracted by his peers, cellphone, or girls, which negatively affects his school work. (T. 205.)

9

In the domain of interacting and relating with others, Ms. Ostrander opined a "serious" or "obvious" problem in nine out of thirteen activities and no problems in the remaining four activities. (T. 205.) She noted behavior modification strategies had been necessary. *Id*.

Ms. Ostrander opined P.L.D. has no problems in the domain of moving about and manipulating objects. (T. 206.)

In the domain of caring for oneself, she indicated P.L.D. has functional problems. (T. 207.) She opined P.L.D. has a "daily" "serious" or "obvious" problem in five out of ten activities and no problem in the other five activities. *Id*. She also explained P.L.D. has difficulty responding properly to either peers or adults. *Id*.

In the domain of health and well-being, Ms. Ostrander indicated she did not know whether P.L.D. takes medication and stated he frequently misses school and his attendance needs improvement. (T. 208.)

2. The Court's Analysis

As non-medical sources, or "other sources," teachers are "valuable sources of evidence for assessing impairment severity and functioning. Often, these sources have close contact with the individuals and have personal knowledge and expertise to make judgments about their impairment(s), activities, and level of functioning over a period of time." SSR 06-03p, 2006 WL 2329939, at *3 (SSA Aug. 9, 2006); *see also Reid v. Astrue*, No. 07-CV-577 (LEK), 2010 WL 2594611, at *5 n.4 (N.D.N.Y. June 23, 2010) ("While the opinions of educators and other non-medical sources are not entitled to controlling weight under the regulations, they are, nevertheless, deemed valuable sources of evidence in assessing impairment severity and functioning and should be considered by the ALJ.").

Opinions offered by teachers "should be evaluated by using the [20 C.F.R. § 416.927] factors," although "[n]ot every factor . . . will apply in every case." SSR 06-03p, 2006 WL 2329939, at *5; *see also Bonet ex rel. T.B. v. Astrue*, No. 1:11-cv-1140 (GLS), 2012 WL 3544830, at *7 (N.D.N.Y. Aug. 16, 2012). Therefore, "it would be appropriate to consider such factors as the nature and extent of the relationship between the source and the individual, the source's qualifications, the source's area of specialty or expertise, the degree to which the source presents relevant evidence to support his or her opinion, whether the opinion is consistent with other evidence, and any other factors that tend to support or refute the opinion." SSR 06-03p, 2006 WL 2329939, at *5. In fact, "under certain circumstances," a teacher's opinion may "properly be determined to outweigh the opinion from a medical source, including a treating source." *Id*. at *6.

Thus, while the ALJ is not obliged to assign weight or give deference to opinions of school teachers, the ALJ "should explain the weight given to opinions from these 'other sources,' or otherwise ensure that the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow the adjudicator's reasoning, when such opinions may have an effect on the outcome of the case." *Torres ex rel. G.S.R.R. v. Comm'r of Soc. Sec.*, No. 17-CV-1061, 2019 WL 4140942, at *4 (W.D.N.Y. Aug. 30, 2019) (quoting SSR 06-03P, 2006 WL 2329939, at *6); *see also Slattery v. Colvin*, 111 F. Supp. 3d 360, 372 (W.D.N.Y. 2015) ("While the Commissioner is thus free to decide that the opinions of 'other sources' . . . are entitled to no weight or little weight, those decisions should be explained.").

The Court recognizes an ALJ need not mention every piece of evidence presented when "the evidence of record permits [the reviewer] to glean the rationale of an ALJ's decision." *Mongeur v. Heckler*, 722 F.2d 1033, 1040 (2d Cir. 1983); *see also Brault v. Soc. Sec. Admin.,*

11

*Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012) (holding the ALJ is "not required to discuss every piece of evidence submitted," and the "failure to cite specific evidence does not indicate that such evidence was not considered"). Thus, "[w]hile the ALJ is not required to reconcile every shred of evidence, the ALJ must acknowledge relevant evidence and explain his rejection of such evidence." *Walker ex rel. J.B. v. Astrue*, No. 06-CV-1180 (NAM), 2010 WL 2287566, at *15 (N.D.N.Y. June 3, 2010). In this case, however, there is no discussion, analysis, or mention of Ms. Ostrander's opinion (Exhibit 15E). (T. 24-39.) The ALJ cannot "'pick and choose' evidence in the record that supports his conclusions." *Cruz v. Barnhart*, 343 F. Supp. 2d 218, 224 (S.D.N.Y. 2004).

A reviewing court may not affirm an ALJ's decision if it reasonably doubts whether the proper legal standards were applied, even if the decision appears to be supported by substantial evidence. *Johnson*, 817 F.2d at 986. Here, the ALJ's failure to articulate the factors in his determination of Ms. Ostrander's opinion, or even acknowledge her opinion was in the record, reasonably suggests the proper legal standards were not applied and leads this Court to remand. *See, e.g.*, *Baez ex rel. D.J. v. Colvin*, No. 6:13-CV-142 (DNH/TWD), 2014 WL 1311998, at *11 (N.D.N.Y. Mar. 31, 2014) (finding remand was required where the ALJ failed to even acknowledge a teacher's opinion was in the record); *Rossi v. Comm'r of Soc. Sec.*, No. 5:10-CV-97 (TJM/ATB), 2010 WL 5313771, at *9 (N.D.N.Y. Dec. 2, 2010) (finding remand for further proceedings warranted where the ALJ "failed to reconcile the teacher's findings with other, more positive evidence in the education records, upon which the ALJ selectively relied"), *report-recommendation adopted by* 2010 WL 5325633 (N.D.N.Y. Dec. 20, 2010); *Dabul-Montini ex rel. N.D.*, No. 09-CV-966 (TJM/VEB), 2010 WL 3584348, at *7 (N.D.N.Y. July 30, 2010) (recommending remand where "although [the ALJ] referenced the findings of [claimant's

12

teacher] in his general discussion of the evidence[,] the ALJ made no attempt to reconcile [the teacher's] dramatic findings with his 'less than marked limitation' assessment"), *report-recommendation adopted by* 2010 WL 3584289 (N.D.N.Y. Sept. 7, 2010); *Hickman ex rel. M.A.H. v. Astrue*, 728 F. Supp. 2d 168, 178 (N.D.N.Y. 2010) (remanding where "[t]he ALJ provided no rationale for rejecting the opinions of claimant's classroom teachers, special education teachers and school psychologist in favor of the non-examining, consultative physician").

Despite Defendant's argument to the contrary, the ALJ's treatment of the teacher questionnaire was not harmless error because Ms. Ostrander's opinion may have had an effect on the outcome of the case. Specifically, Plaintiff contends Ms. Ostrander's opinion is supported by Dr. Quinones-Guzman, whose opinion supports marked, or possibly greater, limitations in at least two domains of functioning. (Dkt. No. 11 at 12, T. 485-89.) *See* 20 C.F.R. § 404.1527(d)(4) ("Generally, the more consistent an opinion is with the record as a whole, the more weight we will give to that opinion.").

For example, in the domain of caring for himself, Ms. Ostrander noted P.L.D. has "difficulty responding properly to either peers or adults," and opined he has a "serious" problem responding appropriately to changes in own mood (e.g., calming self), and an "obvious" problem handling frustration appropriately, being patient when necessary, using appropriate coping skills to meet daily demands of school environment, and knowing when to ask questions. (T. 207.) Dr. Quinones-Guzman opined P.L.D. has "extreme" loss in the ability to understand what is right and wrong, what is acceptable and unacceptable behavior, and demonstrate consistent control over behavior and can avoid behaviors that are unsafe. (T. 487-88.)

13

In the domain of acquiring and using information, Ms. Ostrander opined P.L.D. has a "serious" problem comprehending oral instructions, understanding school and content vocabulary, reading and comprehending written material, comprehending and doing math problems, understanding and participating in class discussions, expressing ideas in written form, recalling and applying previously learned material, and applying problem-solving skills in class discussions, and an "obvious" problem with providing organized oral explanations and adequate descriptions, and learning new material. (T. 203-04.) Dr. Quinones-Guzman opined P.L.D. has "extreme" loss in the ability to maintain concentration and attention, perform activities within a schedule, maintain regular attendance and be punctual, work/study in coordination with or proximity to others without being unduly distracted by them, complete a normal school day and school week without interruptions from psychologically based symptoms, and demonstrate learning in academic assignments, and "marked" loss in the ability to understand and remember very short and simple instructions, apply learning to daily situations without assistance, comprehend and express both simple and complex ideas, using increasingly complex language in learning and daily living situations, plan ahead for future activities, and begin realistic occupational planning. (T. 485-86.)

In the domain of attending and completing tasks, Ms. Ostrander opined P.L.D. has a daily "obvious" problem sustaining attention during play/sports activities, focusing long enough to finish assigned activity or task, refocusing to task when necessary, carrying out single-step instructions, carrying out multi-step instructions, waiting to take turns, changing from one activity to another without being disruptive, completing class/homework assignments, and completing work accurately without careless mistakes, and a daily "slight" problem paying attention when spoken to directly, organizing own things or school materials, working without

14

distracting self or others, and working at reasonable pace/finishing on time. (T. 204.) Dr. Quinones-Guzman opined P.L.D. had "extreme" loss in the ability to change activities or routines without distracting self or others, complete a transition task without extra reminders, focus to remember and organize materials, pay attention in increasingly longer presentations and discussions, maintain concentration while reading textbooks, plan and complete long-range academic projects independently, and maintain attention on tasks for extended periods of time, and is not unduly distracted by or distracting to peers in a school or work setting; and "marked" loss in the ability to concentrate on details, and sustain attention well enough to complete chores and read alone. (T. 486.)

However, the ALJ was responsible for reviewing all of the medical and other evidence before him, resolving any inconsistencies therein, and making a determination consistent with the evidence as a whole. *See Bliss v. Colvin*, No. 3:13-CV-1086 (GLS/CFH), 2015 WL 457643, at *7 (N.D.N.Y. Feb. 3, 2015) ("It is the ALJ's sole responsibility to weigh all medical evidence and resolve material conflicts where sufficient evidence provides for such."). The Court's task is not to fill any gaps in the ALJ's analysis and reweigh that evidence. *See Vincent v. Shalala*, 830 F. Supp. 126, 133 (N.D.N.Y. 1993) ("[I]t is not the function of the reviewing court to reweigh the evidence.") (citing *Carroll v. Sec'y of Health & Human Servs.*, 705 F.2d 638, 642 (2d Cir. 1983)).

If the ALJ did in fact consider Ms. Ostrander's opinion (Exhibit 15E) when considering P.L.D.'s school records (Exhibit 12F), thereby applying the proper legal standard, he failed to show his calculations in the decision. An ALJ must set forth the crucial factors justifying his findings with sufficient specificity to allow a court to determine whether substantial evidence supports the decision. *See Booker v. Astrue*, 07-CV-0646 (GLS), 2011 WL 3735808, at *5

15

(N.D.N.Y. Aug. 24, 2011) ("The crucial factors in an ALJ's decision must be set forth in sufficient detail as to enable meaningful review by the court.") (citing *Ferraris v. Heckler*, 728 F.2d 582, 587 (2d Cir. 1984)); *Hickman*, 728 F. Supp. 2d at 173 ("The ALJ must 'build an accurate and logical bridge from the evidence to [his] conclusion to enable a meaningful review.'") (quoting *Steele v. Barnhart*, 290 F.3d 936, 941 (7th Cir. 2002)). This Court may not "create *post-hoc* rationalizations to explain the Commissioner's treatment of evidence when that treatment is not apparent from the Commissioner's decision itself." *Petersen v. Astrue*, 2 F. Supp. 3d 223, 234 (N.D.N.Y. 2012); *Hamedallah ex rel. E.B. v. Astrue*, 876 F. Supp. 2d 133, 144 (N.D.N.Y. 2012) ("Subsequent arguments by the Commissioner detailing the substantial evidence supporting the ALJ's decision are not a proper substitute for the ALJ engaging in the same evaluation.").

In light of the foregoing, this matter therefore is remanded for further administrative proceedings and to address the opinion of Ms. Ostrander.

### B.     The Treating Physician Rule

As set forth above, Plaintiff also argues the Commissioner's final decision is not supported by substantial evidence because the ALJ failed to follow and apply the treating physician rule when weighing the opinion of Dr. Quinones-Guzman. (Dkt. No. 11 at 13-15.) Defendant argues substantial evidence supports the ALJ's evaluation of Dr. Quinones-Guzman's opinion. (Dkt. No. 15 at 11-13.) However, because the Court has already determined, for the reason previously discussed, that remand of this matter for further administrative proceedings is necessary, the Court declines to reach this issue. *See, e.g.*, *Bell v. Colvin*, No. 5:15-CV-01160 (LEK), 2016 WL 7017395, at *10 (N.D.N.Y. Dec. 1, 2016) (declining to reach arguments "devoted to the question whether substantial evidence supports various determinations made by

16

[the] ALJ" where the court had already determined remand was warranted); *Butts v. Comm'r of Soc. Sec.*, No. 3:16-CV-874 (CFH), 2018 WL 387893, at *8 (N.D.N.Y. Jan. 11, 2018) (same). However, upon remand, the ALJ should conduct a new analysis of the evidence of record in addition to addressing the opinion of Ms. Ostrander.

**ACCORDINGLY**, it is

**ORDERED** that Plaintiff's motion for judgment on the pleadings (Dkt. No. 11) is **GRANTED**; and it is further

**ORDERED** that Defendant's motion for judgment on the pleadings (Dkt. No. 15) is **DENIED**; and it is further

**ORDERED** that Defendant's decision denying Plaintiff disability benefits is **VACATED** and this case is **REMANDED** pursuant to Sentence Four of 42 § U.S.C. 405(g) for proceedings consistent with this Decision and Order.

Dated: September 20, 2019
       Syracuse, New York

Thérèse Wiley Dancks
United States Magistrate Judge